UNITED STATES of America,
Plaintiff-Appellee,

v.

Marsha Dianne HAYES,
Defendant-Appellant.

No. 79–2230.

United States Court of Appeals,
Tenth Circuit.

Submitted Dec. 15, 1980.

Decided Feb. 9, 1981.

Leonard D. Munker, Federal Public Defender, and Ira R. Kirkendoll, Asst. Federal Public Defender, D. Kans., Kansas City, Kans., for defendant-appellant.

Robert L. Ackley, Fort Leavenworth, Kans., for plaintiff-appellee.

Before HOLLOWAY, LOGAN and SEYMOUR, Circuit Judges.

LOGAN, Circuit Judge.

Marsha Dianne Hayes appeals her conviction of driving while under the influence of intoxicating liquor on the Federal Military Reservation at Fort Leavenworth, in violtion of Kan.Stat.Ann. § 8–1567 (Supp.1979), made applicable to the federal reservation by 18 U.S.C. § 13 (referencing 18 U.S.C. § 7). The case has been submitted on the briefs by agreement of the parties.

The issues on appeal are (1) the sufficiency of the evidence to support the verdict, and (2) whether the sentence imposed by the district judge, which differed somewhat from that rendered by the magistrate, violated constitutional rights of defendant.

The entire evidence at trial consisted of three military police witnesses, the examining doctor (called as a defense witness), and the hospital report showing a blood alcohol level of 0.13 percent accompanied by the examining physician's observations. Defendant's insufficiency of the evidence argument is based upon the examining doctor's testimony that in his opinion Hayes was not "intoxicated" although she was "under the influence" of alcohol. It is argued that the Kan.Stat.Ann. § 8–1567 and § 8–1005 are contradictory in that § 8–1567(a) makes it unlawful for anyone under the influence of intoxicating liquor to drive [1] while § 8–1005(a)(2) allows a party with up to 0.10 percent blood level to operate a vehicle without a presumption being applicable.[2] Defendant notes that in 1967

---

1. Kan.Stat.Ann. § 8–1567 (Supp.1979), in pertinent part, reads as follows:

"(a) It is unlawful and punishable as provided in subsection (c) of this section for any person who is under the influence of intoxi-

cating liquor to operate any vehicle within this state."

2. Kan.Stat.Ann. § 8–1005(a)(2) (Supp.1979) reads as follows:

the blood level necessary to trigger the presumption was reduced from 0.15 percent to 0.10 percent. 1967 Kan.Sess. Laws ch. 60, § 2. From this she argues K.S.A. § 8–1567(a) should be read to require her to be "intoxicated" to be convicted. We do not agree; the statute requires only that she be driving "under the influence of intoxicating liquor." *Id.* It is within the province of the state to set and to change a de minimis standard for application of the law. The hospital report showing Hayes had 0.13 percent alcohol level by weight in her blood, together with the testimony of the three military police witnesses who observed her, are sufficient to support a finding beyond a reasonable doubt that Hayes violated the statute.

■ Hayes originally elected to be tried by the U.S. magistrate. *See* 18 U.S.C. § 3401; Fed.R.Crim.P. 5(b). The magistrate found her guilty and imposed a sentence of one year (suspended) and $200 fine; he also restricted Hayes' driving privileges for 90 days to "1. Use of car as required by her work and in seeking employment. 2. To provide household necessities including trips to Post Office. 3. As needed in connection with attending religious services." The magistrate also required Hayes to undertake psychological or psychiatric counseling.

Hayes appealed to the district court and, when it was discovered there was no record of the trial before the magistrate because of a recording equipment malfunction, she agreed to the court's proposal of a trial de novo before the district judge. After hearing the evidence the district judge found Hayes guilty. The judge considered the same presentence report presented to the magistrate and pronounced sentence identical to that of the magistrate, except for omitting the $200 fine, lengthening the restriction on Hayes' driving privileges from 90 days to one year, and restricting Hayes'

"(2) If there was at the time 0.10 percent or more by weight of alcohol in the defendant's blood, it shall be presumed that the defendant was under the influence of intoxicating liquor."

use of a car to (1) twice each week during daylight hours to obtain food and household necessities, and (2) as required for attending religious services.

Hayes alleges the increased severity of her sentence on retrial has a chilling effect on her exercise of the right to appeal and therefore violates her constitutional rights. *See North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). *Cf. United States v. DiFrancesco,* —— U.S. ——, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980) (double jeopardy implication of increasing punishment on appeal).[3]

In *Pearce,* the Supreme Court considered whether a greater sentence could be imposed at a second trial after a defendant had succeeded in overturning his conviction on appeal. While holding a greater sentence on retrial was constitutionally permissible, the Court declared that due process requires that vindictiveness play no part in the new sentence.

"In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal."

395 U.S. at 726, 89 S.Ct. at 2081. The procedures outlined in *Pearce* have not been followed in the instant case.

The government relies principally upon *Colten v. Kentucky,* 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972), to support its

**3.** Although the district judge omitted the $200 fine imposed by the magistrate, we agree that the increased length and severity of the driving restrictions make this a case of greater punishment being imposed upon retrial.

contention that imposition of greater punishment on retrial was permissible in this case without following the *Pearce* procedures. *Colten* held that the hazard of being penalized for seeking a new trial, which underlay the holding of *Pearce,* did not inhere in the Kentucky state court system permitting a trial de novo upon an appeal from a so-called inferior court to a court of general criminal jurisdiction. The Supreme Court noted the following distinguishing characteristics in the Kentucky two-tier system. First, the court conducting the second trial and imposing final sentence "is not the court with whose work the defendant was sufficiently dissatisfied to seek a different result on appeal." *Id.* at 116, 92 S.Ct. at 1960. Second, the de novo court is not asked to find error in another court's work; it is asked to provide a new trial. *Id.* at 117, 92 S.Ct. at 1960. Third, since the second level court is likely to reflect the attitude that the inferior court is not designed to provide an error-free trial, but is a court of convenience designed to provide speedy and inexpensive means of disposing of minor offenses, it is not likely to deal more strictly with a defendant insisting upon a de novo trial. *Id.* at 117, 92 S.Ct. at 1960. Finally, the record from the inferior court apparently is not before the superior court, which in all likelihood is not even informed of the sentence imposed by the inferior court. *Id.* at 117–18, 92 S.Ct. at 1960–1961.[4]

The *Pearce* rule was further clarified in *Chaffin v. Stynchcombe,* 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973). After successfully attacking his original conviction, the defendant in *Chaffin* was retried and sentenced by a jury to a greater term. Concentrating on the issue of vindictiveness, the Supreme Court ruled that since the responsibility of sentencing is entrusted to the jury under the Georgia system, the second jury, unlike a judge who has been reversed on appeal, would "have no personal stake in the prior conviction and no motivation to engage in self-vindication" or to discourage criminal defendants from seeking appellate review. *Id.* at 27, 93 S.Ct. at 1983. In *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), the Supreme Court reiterated that "*Pearce* was directed at insuring the absence of 'vindictiveness' against a criminal defendant who attacked his initial conviction on appeal." *Id.* at 26, 94 S.Ct. at 2101. The Court stated that the lesson emerging from *Pearce, Colten,* and *Chaffin* is that "the Due Process Clause is not offended by all possibilities of increased punishment upon retrial after appeal, but only by those that pose a realistic likelihood of 'vindictiveness.'" *Id.* at 27, 94 S.Ct. at 2102.

Hayes' trial de novo, albeit a procedural aberration produced by a recording equipment malfunction, is significantly similar to the de novo trial the Supreme Court encountered in *Colten;* we are not persuaded that the threat of being penalized for seeking a new trial, which underlay the Court's holding in *Pearce,* is any more inherent in the instant case than it was in *Colten* or *Chaffin.* The district judge did not conduct the prior trial; in no real sense is the district court "asked to do over what it thought it had already done correctly." *Colten,* 407 U.S. at 117, 92 S.Ct. at 1960. Nor was the district court asked to find error in another court's work; the trial de novo represented a completely fresh determination of Hayes' guilt or innocence. Although the procedures for trial before a magistrate are designed to produce error-free trials and to insure full recognition of constitutional rights, we see no reason to assume the district court thought Hayes had received a due process trial and ought to be satisfied with it. There is no basis for finding the district court did anything other than "invoke the normal processes of a criminal trial and then sentence in accordance with the normal standards applied in that court to cases tried there in the first instance." *Id.* at 118, 92 S.Ct. at 1961.

Finally, we are influenced by the reality that the district judge often reviews pro-

---

4. The Supreme Court noted that in *Colten,* the superior court judge was in fact aware of the sentence imposed by the inferior court. 407 U.S. at 118 n.14, 92 S.Ct. at 1961 n.14.

ceedings conducted by magistrates. *See* 18 U.S.C. § 3402; 28 U.S.C. § 636; R.Proc. for Trial of Minor Offenses before U. S. Magistrates 5 and 8. We think it is unlikely the district court would impose a higher sentence in order to discourage what it might regard as a meritless appeal from a magistrate's determination. *See Chaffin*, 412 U.S. at 27, 93 S.Ct. at 1983. *But cf. United States v. Hawthorne*, 532 F.2d 318 (3d Cir. 1976) (where different district judge retries case after appeal, institutional interests might occasion higher sentence). There is no evidence the sentence imposed in the instant case was tainted by vindictiveness. *Accord, Canal Zone v. King*, 595 F.2d 1114 (5th Cir. 1979).

AFFIRMED.