F I L E D
**United States Court of Appeals
Tenth Circuit**

**OCT 16 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

      v.

OPAL M. DENNY,

      Defendant - Appellant.

No. 02-3016
D.C. No. 01-CR-40065-01-RDR
(D. Kansas)

**ORDER AND JUDGMENT** *

Before **HENRY** , Circuit Judge , **BRORBY** , Senior Circuit Judge, and **HARTZ** , Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument will not materially assist the disposition of this appeal. See Fed. R. App. P. 34(a)(2). The case is therefore ordered submitted without oral argument.

---

* This order and judgment is not binding precedent, except under the doctrines of res judicata, collateral estoppel, and law of the case. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

The defendant Opal Denny appeals her conviction for driving under the influence of alcohol and drugs on a federal military reservation at Fort Riley, Kansas, a violation of Kan. Stat. Ann. § 8-1567(a)(5) and 18 U.S.C. § 13.[1] Ms. Denny argues that (1) the evidence is insufficient to support her conviction and (2) the district court abused its discretion in admitting a military police officer's testimony that, in his opinion, Ms. Denny was intoxicated. We are not persuaded by Ms. Denny's arguments, and we therefore affirm her conviction.

## I. BACKGROUND

The government filed a one count information charging Ms. Denny with "operat[ing] or attempt[ing] to operate a motor vehicle while under the influence of alcohol to a degree that rendered her incapable of safely driving a vehicle," or, in the alternative, "unlawfully operat[ing] or attempt[ing] to operate a motor vehicle while under the influence of a combination of alcohol and any drug or drugs to a degree that rendered her incapable of safely driving a vehicle," in violation of Kan. Stat. Ann. §§ 8-1567(a)(3) and 8-1567(a)(5) and 18 U.S.C. § 13.

---

[1] The Assimilative Crimes Act, 18 U.S.C. § 13, provides that certain state laws, including those relating to the operation of a motor vehicle while under the influence of drugs or alcohol, apply in areas within federal jurisdiction, including federal military reservations. See 18 U.S.C. § 13(b); United States v. Hayes, 640 F.2d 280 (10th Cir. 1981) (affirming conviction for driving under the influence of alcohol in violation of Kan. Stat. Ann. § 8-1567 and 18 U.S.C. § 13).

Rec. vol. I, doc. 2 (Information, filed July 3, 2001).  The case was tried before a magistrate judge.

The evidence presented at trial indicated that, at approximately 3:00 a.m. on Sunday morning, September 24, 2000, military policeman Charles Bennett observed a truck swerving back and forth on Huebner Avenue (within the grounds of the Fort Riley military reservation).  Officer Bennett testified that the truck "completely left the road going to the shoulder . . . c[a]me back [,] [t]raveled in the middle marker, c[a]me back, and hit the side marker."  Rec. vol. II, at 16 (Trial Tr.).  The truck was moving at thirty to thirty-five miles per hour, even though the speed limit was fifty miles per hour.  Officer Bennett activated his siren and lights, but the truck did not immediately stop.  After Officer Bennett turned on all his lights and blared his siren, the truck did stop.  Officer Bennett ran a computer check, determined that the registration was current, and then approached the truck on foot.

As Officer Bennett came within about two feet of the driver's side door of the truck, he smelled alcohol.  The driver, Ms. Denny, was alone in the truck.  According to Officer Bennett, her speech was slow and slurred.  Ms. Denny told Officer Bennett that "we didn't know what she had been through that night,"id. at 20, and that she had had a couple of drinks and had lost her husband in "Aggieville," an entertainment district in Manhattan, Kansas.

Officer Bennett then asked Ms. Denny to get out of the truck and move to the rear of her vehicle so that she could perform field sobriety tests. As she stepped out of the truck, Ms. Denny told Officer Bennett that she had to go to the bathroom. After Officer Bennett told her that he could take her to the Provost Marshall's office to use the bathroom, Ms. Denny removed her pants and urinated and defecated next to her truck.

Officer Bennett testified that, while Ms. Denny attempted to pull her pants back up, she almost fell over several times. He decided not to administer the sobriety tests at the scene of the traffic stop because he thought it would be unsafe. Accompanied by other officers, Officer Bennett transported Ms. Denny to the Fort Riley Provost Marshall's office. There, Ms. Denny refused to perform the requested sobriety tests. Over defense counsel's objection, Officer Bennett stated that he believed that Ms. Denny was "extremely intoxicated." Id. at 42.

The military police cited Ms. Denny for driving under the influence of alcohol and drugs and released her. Later in the day, Ms. Denny called the Provost Marshall's office and spoke to Sergeant Joshua Inman several times. According to Sergeant Inman, Ms. Denny informed him that she had urinated and defecated because she was taking muscle relaxants. She also told him that she had consumed one beer earlier in the evening of September 23, 2000. Finally, she

said that she was on her way to the hospital when she was stopped by Officer Bennett.

Mr. Denny's husband, Jeremiah Denny, testified in her defense. He stated that, when he left home on the evening of September 23, 2000, Ms. Denny was sick and ill in bed. According to Mr. Denny, when he returned home between 2:30 and 3:00 a.m. on the morning of September 24, 2000, he noticed that she was gone. He presumed that she had gone to the hospital, but he nevertheless went to bed.

According to Mr. Denny, when his wife returned home later that morning she was neither intoxicated nor impaired. He stated that she went to bed and that he did not take her to the hospital until later than evening.

Ms. Denny also testified in her own behalf. She stated that, at the time she was stopped, she had been ill for several days with diarrhea and vomiting. She added that she had been taking pain medication (Flexeril) because of a car accident, but explained that she had not taken any doses since September 22, 2001.

As to the events on the evening of September 23 and the morning of September 24, Ms. Denny stated that she drank one beer at about 9:00 p.m. in order to calm her diarrhea. About 2:00 a.m., she left home to seek treatment at the Irwin Army Hospital at Fort Riley. While on Huebner Road, she noticed six

dead raccoons and swerved to avoid them. When she was pulled over by Officer Bennett, she stated that she told them she was sick and in a hurry. She later told him that she was going to the hospital. She said she did not want to get out of the vehicle because she had to go to the bathroom badly. Ms. Denny explained that her refusal to submit to sobriety tests was based upon the advice of an attorney.

According to Ms. Denny, she arrived home from the Provost Marshall's office around 5:30 or 6:00 a.m. However, she did not go to the hospital until early that evening. At the hospital, a physician concluded that she was suffering from gastroenteritis. Ms. Denny denied drinking anything other than the one beer the evening of September 23, 2000, and denied that she was impaired while driving.

The magistrate judge found the testimony of the military policemen more credible that the testimony of Ms. Denny and her husband. Accordingly, he found the defendant guilty of "driving while under the influence of alcohol and drugs to a degree that rendered her incapable of safely driving a vehicle," a violation of Kan. Stat. Ann. § 8-1567(a)(5), and 18 U.S.C. § 13. See Rec. vol. I, doc. 2, at 7 (Rec. on Appeal to Dist. Ct., Mem. and Order, filed Feb. 28, 2001). The magistrate judge sentenced her to a one-year period of probation and a term of imprisonment of eight days (to be served on four consecutive weekends). He also imposed a $300 fine and ordered Ms. Denny to participate in a program for

substance abuse and an alcohol/drug information school, as directed by the United States Probation Office. Finally, the magistrate judge directed Ms. Denny to abstain from alcohol during the term of probation. Ms. Denny appealed the magistrate judge's decision to the district court, which affirmed her conviction and sentence. She now appeals to this court.

## II. DISCUSSION

### A. Sufficiency of Evidence

On appeal to this court, Ms. Denny first argues that the evidence is insufficient to support her conviction. Ms. Denny cites the following evidence: (1) she testified that she had not taken any of the muscle relaxant after September 22, 2000, and this is what she told hospital personnel on September 24, 2000; (2) although Officer Bennett testified that he did not see dead racoons in the road, he admitted that there was wildlife in the road by the fields; (3) Officer Bennett's written report differed from his testimony—the written report refers to three swerves within 100 meters, while his testimony describes her completely leaving the roadway, traveling in the middle marker, and hitting the side marker; (4) Officer Bennett could not recall the kind of alcoholic odor that he smelled; (5) Ms. Denny denied that she was incapable of standing; she said that Officer Bennett grabbed her before she could walk on her own; (6) Officer Bennett

provided contradictory testimony on her ability to stand, first stating that she leaned against the truck and then stating that she was standing; (7) although Officer Bennett stated that Ms. Denny's speech was slurred, he did not know her normal speech pattern; (8) Officer Bennett gave contradictory testimony about his certification to administer a particular sobriety test; he also gave contradictory testimony about which officer filled out one of the forms pertaing to Ms. Denny's refusal to submit to sobriety tests.

"The sufficiency of the evidence to support a criminal conviction is a question of law to be reviewed de novo. In doing so, however, we view the evidence and all reasonable inferences therefrom in the light most favorable to the jury verdicts." United States v. Higgins, 282 F.3d 1261, 1274 (10th Cir. 2002). We will not hold that testimony is, as a matter of law, incredible unless it is "'unbelievable on its face, i.e., testimony as to facts that [the witness] physically could not have possibly observed or events that could not have occurred under the laws of nature.'" Tapia v. Tansy, 926 F.2d 1554, 1562 (10th Cir. 1991) (quoting United States v. Garner, 581 F.2d 481, 485 (5th Cir. 1978)). Otherwise, "our function as a court of review prevents us from re-weighing the testimony and coming to a conclusion at odds with the one reached by the [trier of fact]." Higgins, 282 F.3d at 1275.

Here, upon review of the record, we conclude that the evidence is sufficient to support Ms. Denny's conviction. The magistrate judge, who heard the testimony first-hand, found the testimony of the military policemen more credible that the testimony of the Dennys on several key points—that Ms. Denny initially admitted that she had been drinking in Aggieville, that there were no dead racoons on the road, and that Ms. Denny exhibited signs of intoxication (slow and slurred speech and an unsteady gait). The police officers' testimony is not "unbelievable on its face," see Tapia, 926 F.2d at 1562, and we must thus accept it as true for purposes of examining the sufficiency of the evidence. Additionally, in light of the policemen's testimony, the record supports the magistrate judge's finding that certain testimony offered by the Dennys was implausible, particularly Ms. Denny's statements that she drank a beer to relieve her diarrhea and Mr. Denny's statement that, in spite of his alleged belief that his wife had gone to the hospital, he made no efforts to find her.

The specific arguments that Ms. Denny advances in this appeal are unconvincing. Many of these arguments are based on Ms. Denny's own testimony or the testimony of her husband. However, the testimony of the military policemen persuasively rebuts the Denny's version of the relevant events. The fact that government and defense witnesses gave differing accounts at trial does not render the evidence insufficient. See id. As to the alleged contradictions and

omissions in the policemen's testimony, none of them foreclosed the magistrate judge from nevertheless believing the policemen on the key facts of this case—that Ms. Denny "was driving while under the influence of alcohol and drugs to a degree that rendered her incapable of safely driving a vehicle." Rec. vol. I, doc. 2, at 7 (Rec. on Appeal to Dist. Ct., Mem. and Order, filed Feb. 28, 2001).

### B. Testimony Regarding Intoxication

Ms. Denny also argues that the magistrate judge erred in allowing Officer Bennett to testify that, in his opinion, she was "extremely intoxicated." Rec. vol. II, at 21, 42 (Tr. Trans.). She contends that the admission of this testimony is inconsistent with Federal Rule of Evidence 704, which provides:

> (a) Except as provided in subdivision (b), testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.
> (b) <u>No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.</u>

Fed. R. Evid. 704 (emphasis added). According to Ms. Denny, Officer Bennett was an expert witness who was improperly allowed to give his opinion about a

mental state that constituted an element of the case, and he therefore infringed on the responsibility of the trier of fact.

Generally, "[w]e review questions concerning the admission of evidence under an abuse of discretion standard. 'In reviewing a court's determination for abuse of discretion, we will not disturb the determination absent a distinct showing that it was based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a clear error in judgment.'" United States v. Mitchell, 113 F.3d 1528, 1531 (10th Cir. 1997) (quoting Cartier v. Jackson, 59 F.3d 1046, 1048 (10th Cir. 1995)). Even if we conclude that a district court erroneously excluded certain evidence, that error will only result in reversal if we conclude that the error was not harmless and "had a substantial influence on the [judge's finding] in the context of the entire case, or leaves one in grave doubt whether it had such an effect." Id. at 1532.

Officer Bennett's testimony does not constitute the kind of expert opinion barred by Fed. R. Evid. 704(b). His statement that Ms. Denny was "extremely intoxicated" was based not on any specialized training but rather on observations that could have been made by a lay witness (i.e, her manner of speaking and walking and the smell of her breath). Such testimony is allowed by Fed. R. Evid. 701, which provides:

> If the witness is not testifying as an expert, the witness'
> testimony in the form of opinions or inferences is limited

-11-

to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701.

The Third Circuit has given the following explanation of Rule 701:

The prototypical example of the type of evidence contemplated by the adoption of Rule 701 relates to the appearance of persons or things, identity, the manner of conduct, competency of a person, degrees of light or darkness, sound, size, weight, distance, and an endless number of items that cannot be described factually in words apart from inferences. . . .

. . . [T]estimony that a person was "excited" or "angry" is more evocative and understandable than a long physical description of the person's outward manifestations. . . . For example, a witness who testifies that an individual whom he saw staggering or lurching along the way was drunk is spared the difficulty of describing, with the precision of an orthopedist or choreographer, the person's gait, angle of walk, etc.

Asplundh Mfg. Div.. v. Benton Harbor Eng'g, 57 F.3d 1190, 1196 (3d Cir. 1995) (citations omitted) (emphasis added); see also State v. Hall, 353 N.W.2d 37, 43 (S.D. 1984) (permitting police officers to give lay opinion concerning defendant's intoxicated state and stating that "[t]raining and characterization as an expert are not required in order to determine whether a person is under the influence of alcohol"); G. Lilly, An Introduction to the Law of Evidence § 4.9, at 108 & n. 8

(2d ed. 1987) (noting that many courts have approved lay opinion as to a person's general physical condition, such as intoxication). Accordingly, in light of Fed. R. Evid. 701, the magistrate judge did not abuse his discretion in admitting Officer Bennett's testimony.

Moreover, even if the magistrate judge erred in admitting Officer Bennett's opinion testimony, Ms. Denny has failed to establish that this testimony "had a substantial influence on the [judge's finding] in the context of the entire case, or leaves one in grave doubt whether it had such an effect." Mitchell, 113 F.3d at 1532. Independently of Officer Bennett's opinion that Ms. Denny was extremely intoxicated, the policemen's direct observations support the magistrate judge's finding that Ms. Denny was driving under the influence of drugs and alcohol.

### III.  CONCLUSION

Accordingly, we AFFIRM Ms. Denny's conviction and sentence.

Entered for the Court,

Robert H. Henry
Circuit Judge